IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOTI MBEWE, | : | |
|     Petitioner | : | |
| | : | No. 1:20-cv-01556 |
| v. | : | |
| | : | (Judge Kane) |
| CLAIR DOLL, | : | |
|     Respondent | : | |

**MEMORANDUM**

On August 28, 2020, pro se Petitioner Loti Mbewe ("Petitioner"), who is currently confined at the York County Prison in York, Pennsylvania, initiated the above-captioned action pursuant to 28 U.S.C. § 2241, challenging the constitutionality of his detention by the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). (Doc. No. 1.) Following an Order to show cause (Doc. No. 3), Respondent filed a response, contending that Petitioner's detention is lawful (Doc. No. 6). Petitioner filed his traverse on October 5, 2020. (Doc. No. 7.) Accordingly, Petitioner's § 2241 petition is ripe for disposition.

**I.    BACKGROUND**

Petitioner is a citizen and native of Zambia who entered the United States via New York City on April 26, 2001, as a visitor for pleasure. (Doc. No. 6-1 at 3.) On February 16, 2017, Petitioner was convicted of robbery and conspiracy to commit robbery in the Court of Common Pleas for Allegheny County, Pennsylvania. (Id. at 11.) Petitioner was sentenced to three (3) to six (6) years' incarceration. (Id.) On February 26, 2019, ICE issued a Notice to Appear, charging Petitioner with being removable pursuant to § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") because he had been convicted of an aggravated felony after admission to the United States. (Id. at 8.) Petitioner was also charged with being removable pursuant to

§ 237(a)(1)(B) of the INA because he remained in the United States for a time longer than that permitted. (Id.) Petitioner was released from the State Correctional Institution Mahanoy ("SCI Mahanoy") on August 27, 2019 and has been in ICE custody ever since. (Id. at 11.)

On December 2, 2019, an immigration judge denied Petitioner's applications for asylum, withholding of removal, adjustment of status, and waiver and ordered him removed to Zambia. (Id. at 15.) Petitioner initially filed an appeal to the Board of Immigration Appeals ("BIA"). (Id. at 12.) Petitioner, however, withdrew his appeal, and on February 14, 2020, the BIA returned the record to the Immigration Court without further action, making Petitioner's order of removal final. (Id. at 12, 33.)

Ever since the entry of Petitioner's removal order, ICE's Enforcement and Removal Operations ("ERO") "has taken steps to execute that order." (Id. at 12.) The "Embassy of Zambia has regularly cooperated with ERO/ICE and issues travel documents on a regular basis." (Id.) On February 26, 2020, ERO mailed a travel document request package to the Embassy of Zambia. (Id.) "Assistance in obtaining a travel document was also requested from Removal and International Operations (RIO)." (Id.)

The Embassy of Zambia "prefers to conduct all consulate interviews in person and routinely issues travel documents once this interview takes place." (Id.) On March 12, 2020, RIO advised ICE/ERO that a consulate member would meet with Petitioner at the York County Prison on March 26, 2020. (Id.) On March 25, 2020, ERO received notice that the Embassy of Zambia was cancelling the interviews scheduled for March 26, 2020 because of the COVID-19 pandemic. (Id.) "RIO advised that they would notify ERO when the interview has been rescheduled." (Id.)

On or about April 17, 2020, RIO learned "that in response to the COVID-19 pandemic, the York County Prison was halting face to face, in-person contact or interviews with ICE detainees." (Id.) RIO advised that "an alternate procedure would need to be arranged with the Embassy of Zambia to conduct the interview with [P]etitioner." (Id.) Since then, ERO has followed up with RIO on five (5) occasions. (Id. at 13.) On each occasion, RIO has notified ERO that it "was attempting to arrange for an alternate procedure with the Embassy of Zambia in lieu of an in-person interview with [P]etitioner." (Id.) On August 31, 2020, the "Embassy of Zambia indicated that once their Headquarters approves the use of an alternate method to conduct the interview, they would then be able to proceed." (Id.) "It is anticipated that [P]etitioner's removal from the United States is imminent once a travel document is issued." (Id.)

In the meantime, ICE/ERO has regularly reviewed Petitioner's custody status. (Id.) On May 15, 2020, Petitioner's detention was continued on the basis that his "criminal history supports the conclusion that he poses a danger to society and/or risk of flight and on the expectation that a travel document will be issued." (Id.) On July 28, 2020, an immigration judge denied Petitioner's request for a bond hearing pursuant to Guerrero-Sanchez v. Warden York County Prison, 905 F.3d 208 (3d Cir. 2018), as premature because Petitioner had not yet been detained for 180 days since the date on which his order of removal became final. (Id. at 34.) On August 18, 2020, an immigration judge denied Petitioner's request for a custody redetermination after concluding that he had "not established that he is not a danger to the community." (Id. at 36.)

Petitioner filed the instant § 2241 petition on August 28, 2020. (Doc. No. 1.) In his § 2241 petition, Petitioner asserts that his continued detention violates the Fifth Amendment's

Due Process Clause as well as the Immigration and Nationality Act ("INA"). (Id. at 6-10.) As relief, Petitioner requests that the Court hold a bond hearing or, in the alternative, direct his release "under appropriate condition[s] of supervision." (Id. at 10.)

## II.     LEGAL STANDARD

Under 28 U.S.C. § 2241(c), a prisoner or detainee may receive habeas relief only if he "is in custody in violation of the Constitution or laws or treaties of the United States." See 28 U.S.C. § 2241(c)(3); see also Maleng v. Cook, 490 U.S. 488, 490 (1989). Because Petitioner is currently detained within the jurisdiction of this Court and asserts that his continued detention violates due process, this Court has jurisdiction over his § 2241 petition. See Zadvydas v. Davis, 533 U.S. 678, 699 (2001); Spencer v. Kemna, 523 U.S. 1, 7 (1998).

## III.    DISCUSSION

In the instant case, the parties do not dispute that Petitioner is currently detained pursuant to 8 U.S.C. § 1231(a), which provides for the detention of individuals who are subject to a final order of removal. See 8 U.S.C. § 1231(a). That section provides that "[e]xcept as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." See 8 U.S.C. § 1231(a)(1)(A). During this ninety (90)-day period, "the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found . . . deportable under section 1227(a)(2)." See id. § 1231(a)(2). After the ninety (90)-day period expires, the alien's detention may continue, or he may be released on supervision. See id. § 1231(a)(3), (6).

The Supreme Court has concluded, however, that § 1231 "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the

United States. It does not permit indefinite detention." See Zadvydas, 533 U.S. at 698. Thus, "[o]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." See id. at 699. To establish a uniform baseline, the Supreme Court concluded that a period of six (6) months is a "presumptively reasonable period of detention." See id. at 701. Moreover, the United States Court of Appeals for the Third Circuit has concluded that "an alien detained under § 1231(a)(6) is generally entitled to a bond hearing after six months (i.e., 180 days) of custody." See Guerrero-Sanchez, 905 F.3d at 226. Following such a hearing, the alien "is entitled to be released from detention unless the government establishes that the alien poses a risk of flight or a danger to the community." See id. at 224 (quoting Diouf v. Napolitano, 634 F.3d 1081, 1092 (9th Cir. 2011)). "The Government must meet its burden in such bond hearings by clear and convincing evidence." See id. at 224 n.12.

Petitioner has been detained pursuant to § 1231(a) since February 14, 2020, the date on which his order of removal became administratively final. As of the date of this Memorandum, therefore, Petitioner has been detained for over seven (7) months, which is beyond the presumptively reasonable six (6)-month period set forth in Zadvydas and Guerrero-Sanchez. The parties do not dispute that on August 18, 2020, an immigration judge conducted a bond hearing pursuant to Guerrero-Sanchez and concluded that Petitioner should remain detained because he had "not established that he is not a danger to the community." (Doc. No. 6-1 at 36.) Petitioner now asserts that he is entitled to habeas relief because he is not a flight risk, is willing to comply with any conditions of release, and anticipates a lengthy period of detention pending removal that violates his due process rights. (Doc. No. 1 at 6-10.) The Court considers each argument in turn.

### A.      Review of Petitioner's August 18, 2020 Custody Determination

The parties do not dispute that on August 18, 2020, an immigration judge conducted a bond hearing pursuant to Guerrero-Sanchez and concluded that Petitioner should remain detained because he had "not established that he is not a danger to the community." (Doc. No. 6-1 at 36.) Petitioner appears to assert that the immigration judge erred in making that determination. (Doc. No. 1 at 6-10.) Respondent asserts that Petitioner failed to exhaust his administrative remedies to the extent he challenges the immigration judge's Guerrero-Sanchez determination. (Doc. No. 6 at 8-9.) For the reasons discussed below, the Court agrees with Respondent.

The Third Circuit has noted that requiring exhaustion of administrative remedies for habeas petitions fosters important goals because: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." See Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir. 1996). "These very important purposes are frequently furthered by requiring aliens who receive a bond hearing before the immigration judge to exhaust their administrative remedies and raise any issues with the BIA prior to seeking federal habeas corpus relief." Chajchic v. Rowley, No. 1:17-cv-457, 2017 WL 4401895, at *3 (M.D. Pa. July 25, 2017), report and recommendation adopted, 2017 WL 4387062 (Oct. 3, 2017).  In the instant case, the record before the Court reflects that Petitioner did not appeal the immigration judge's August 18, 2020 bond decision to the BIA. Thus, Petitioner's arguments regarding the alleged deficiencies in the immigration judge's order have not yet been exhausted at the administrative level. Accordingly, to the extent Petitioner requests that the Court review the immigration

judge's August 18, 2020 order denying him bond, the Court lacks jurisdiction to do so at this time. See Rosas v. Doll, No. 1:20-cv-716, 2020 WL 3172770, at *3 (M.D. Pa. June 15, 2020) (concluding the same regarding a detainee's request to review the immigration judge's custody determination when his appeal to the BIA remained pending at the time he filed his habeas petition); Umarbaev v. Lowe, No. 1:20-cv-00413, 2020 WL 1814157, at * (M.D. Pa. Apr. 9, 2020) (concluding the same regarding a detainee's request to review the immigration judge's custody determination when his motion for reconsideration of that determination was still pending at the time he filed his habeas petition); Nicole S. A. B. v. Edwards, No. 19-14608 (JMV), 2019 WL 6606864, at *3 (D.N.J. Dec. 5, 2019) (concluding the same regarding a detainee's request to review the immigration judge's custody determination when she never filed an appeal of that decision to the BIA).

### B.     Zadvydas Due Process Claim

Petitioner also suggests that his detention violates due process because he "remains in unreasonably prolonged detention." (Doc. No. 1 at 7.) He asserts that he has been detained for over 180 days "with action being taken." (Id. at 10.) Respondent asserts that Petitioner has not met his burden of demonstrating that he is entitled to relief pursuant to Zadvydas. (Doc. No. 6 at 5-7.) For the reasons discussed below, the Court agrees with Respondent.

As noted supra, the Supreme Court has concluded that a period of six (6) months is a "presumptively reasonable period of detention." See Zadvydas, 533 U.S. at 701. After that six (6)-month period, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." See id. In the instant case, Petitioner has not provided good reason for the Court to believe his removal is likely to occur in the reasonably

foreseeable future. See Nicole S. A. B., 2019 WL 6606864, at *3 (denying relief to a detainee under Zadvydas because she "merely allege[d], in conclusory fashion, that her detention has been unreasonably prolonged"); Manuel H., 2019 WL 2710676, at *3 (denying relief to a detainee under Zadvydas because he "provide[d] no evidence in support of his assertion that there is no significant likelihood of his removal in the reasonably foreseeable future"); DonMartin v. Lowe, No. 1:17-cv-1766, 2017 WL 5990114, at *2 (M.D. Pa. Dec. 4, 2017) (denying relief to a detainee who had been detained for eight (8) months because his argument that "his removal [was] unlikely because it ha[d] not yet occurred" was insufficient to meet the standard under Zadvydas). On the contrary, Respondent has presented evidence that the Embassy of Zambia "regularly cooperate[s] with ERO/ICE and issues travel documents on a regular basis." (Doc. No. 6-1 at 12.) Moreover, the record reflects that ERO/ICE and RIO have been diligently working with the Embassy of Zambia to arrange for an alternate procedure in lieu of an in-person interview with Petitioner since the York County Prison has halted all in-person procedures as a response to the COVID-19 pandemic. (Id. at 12-13.) Thus, the Court will deny Petitioner relief with respect to his Zadvydas claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court will deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] (Doc. No. 1.) This denial, however, will be without

---

[1] In his traverse, Petitioner asserts that on September 10, 2020, he tested positive for COVID-19. (Doc. No. 7 at 4, 8.) He vaguely contends that if DHS "was doing [its] job he would have never tested positive for COVID-19." (Id. at 4.) Petitioner, however, does not allege that he is subject to any unconstitutional conditions of confinement at the York County Prison based upon the COVID-19 pandemic, as he fails to assert that he displayed any serious symptoms and/or failed to receive medical care for such. See Hope v. Warden York Cty. Prison, 972 F.3d 310, 324-25 (3d Cir. 2020) (concluding that immigration detainees' claim that they were subject to unconstitutional conditions of confinement based upon the COVID-19 pandemic was cognizable in habeas); Umarbaev v. Lowe, 453 F. Supp. 3d 698, (M.D. Pa. 2020) (concluding that the

prejudice to Petitioner's right to file a new § 2241 petition should he exhaust his administrative remedies regarding his custody determination and in the event he can provide evidence demonstrating that there is no significant likelihood of his removal in the reasonably foreseeable future. An appropriate Order follows.

---

detainee-petitioner had not demonstrated deliberate indifference to a serious medical need where he was placed in quarantine for possible COVID-19 exposure and where the record indicated that he was receiving medical care); Camacho Lopez v. Lowe, 452 F. Supp. 3d 150, 160-63 (M.D. Pa. 2020) (concluding that the detainee-petition had not demonstrated that he was subject to unconstitutional conditions of confinement after he had contracted COVID-19 while confined). Accordingly, to the extent Petitioner seeks release based solely upon his positive COVID-19 test, the Court concludes that he has not demonstrated entitlement to such release at this time.